UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JEFFREY S. SEIGEL,
               Plaintiff,

v.

STRUCTURE TONE ORGANIZATION;
PAVARINI NE CONSTRUCTION CO.;
ROBERT YARDIS; and
MICHAEL MELANOPHY,
               Defendants.
--------------------------------------------------------------x

**MEMORANDUM
OPINION AND ORDER**

19 CV 7307 (VB)

Briccetti, J.:

      By bench ruling on May 26, 2020, the Court granted in part and denied in part the motion to dismiss filed by defendants Structure Tone Organization ("Structure Tone"), Pavarini NE Construction Co. ("Pavarini"), Robert Yardis, and Michael Melanophy.  Among other things, the Court concluded plaintiff failed plausibly to allege a breach of implied contract claim.  Now before the Court are plaintiff's motion for reconsideration of the Court's May 26 bench ruling (Docs. ##35, 37), plaintiff's motion for leave to amend his complaint (Docs. ##44, 45), and defendants' motion for a protective order.  (Doc. #59).

      For the reasons set forth below, the motion for reconsideration is GRANTED and plaintiff's breach of implied contract claim is reinstated; the motion for leave to amend is GRANTED subject to the limitations set forth herein; and the motion for a protective order is GRANTED.

      The Court assumes the parties' familiarity with the factual and procedural background of this case, and recites herein only those facts necessary to adjudicate the pending motions.

1

## DISCUSSION

I.     Reconsideration

Plaintiff contends the Court erred in dismissing his breach of implied contract claim. He argues, among other things, that his pleaded allegations plausibly suggest such a claim, much like the allegations of the plaintiff in Joshi v. Trustees of Columbia University, 2018 WL 2417846 (S.D.N.Y. May 29, 2018),[1] a recent opinion by another judge in this district.

The Court agrees.

    A.     Legal Standard

"To prevail on a motion for reconsideration, the movant must demonstrate 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Catskill Dev., L.L.C. v. Park Place Entm't Corp., 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quoting Doe v. N.Y.C. Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)).[2] Such a motion should be granted only when the Court has overlooked facts or precedent that might have altered the conclusion reached in the earlier decision. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Local Civil Rule 6.3. The movant's burden is weighty to avoid "wasteful repetition of arguments already briefed, considered and decided." Weissman v. Fruchtman, 124 F.R.D. 559, 560 (S.D.N.Y. 1989).

The motion must be "narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." Range Rd. Music, Inc., v. Music Sales Corp., 90 F. Supp. 2d 390, 391–92 (S.D.N.Y.

---

[1]     Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[2]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

2

2000). Further, the motion "may not advance new facts, issues, or arguments not previously presented to the court." Randell v. United States, 64 F.3d 101, 109 (2d Cir. 1995) (citing Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md., 768 F. Supp. 115, 116 (S.D.N.Y. 1991)). This limitation ensures finality and "prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988).

  B. Application

Here, plaintiff argues he plausibly alleged a breach of implied contract claim much like the plaintiff in Joshi v. Trustees of Columbia University.

In Joshi, a plaintiff university professor reported concerns respecting a colleague's research articles after the plaintiff became aware the articles contained inaccurate, falsified or fabricated data. Joshi v. Trs. of Columbia Univ., 2018 WL 2417846, at *3. The plaintiff alleged that in doing so, he relied on protections for complainants who report research misconduct, set forth in the university's research misconduct and non-retaliation policies. Id. The plaintiff further alleged the university retaliated against him because of his complaints. He sued the university for, inter alia, breach of contract premised upon violations of the research misconduct and non-retaliation policies. Id. at 4–5.

Although "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements," Lobosco v. N.Y. Tel. Co./NYNEX, 96 N.Y.2d 312, 317 (2001), the court in Joshi explained "New York cases make clear . . . that workplace policies . . . can create binding contracts." Joshi v. Trs. of Columbia Univ., 2018 WL 2417846, at *5. "To assert a breach of contract claim based on policies contained in employment handbooks, manuals, or codes of conduct, a plaintiff must [plausibly

3

allege] that '(1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment.'" Dutt v. Young Adult Inst., Inc., 2018 WL 3148360, at *5 (S.D.N.Y. June 26, 2018) (quoting Baron v. Port Auth. of N.Y. & N.J., 271 F.3d 81, 85 (2d Cir. 2001)).

In Joshi, the court acknowledged specific provisions of the university's research misconduct policy—"the University shall ensure that . . . all reasonable and practical efforts are made to protect the Complainant from actual or potential retaliation"—and non-retaliation policy—"[the University] expects members of the University community to inform the appropriate parties if they have observed unethical, illegal or suspicious activity"—sufficed plausibly to suggest an express promise that the university would protect employees, including the plaintiff, from reprisal for reporting suspected misconduct, and that such promise restricted the university's right to discharge the plaintiff. Joshi v. Trs. of Columbia Univ., 2018 WL 2417846, at *5.

Similarly, in Dutt v. Young Adult Institute, Inc., 2018 WL 3148360 (S.D.N.Y. June 26, 2018), another judge in this district concluded a plaintiff plausibly alleged a breach of contract claim based on the defendant employer's violation of its non-retaliation policy. There, the plaintiff employee reported suspected misconduct of the company's board chairman and the company's CEO, and alleged he did so in reliance upon the company's code of conduct, which required employees to report suspected violations of company policy or law and expressly prohibited retaliation against individuals who reported suspected violations. Id. at *2–4. The court noted the code of conduct "set[] out an express written policy limiting [the company's]

4

right of discharge," and that the plaintiff "plausibly alleged an implied breach of contract claim to withstand dismissal at this time." Id. at *6.

Although Joshi and Dutt are not controlling caselaw, the Court nevertheless is persuaded plaintiff has plausibly stated a breach of implied contract claim and that such claim should be reinstated to correct legal error or oversight. Plaintiff alleges he was presented with, and was required to sign, Structure Tone's anti-retaliation policy. The policy "articulates the Company's unwavering commitment to . . . protecting employees who raise matters in good faith" (Doc. #26 ("Pl. Decl.") Ex. A at 1), obligates all employees "to speak up and promptly report any suspected violation of the Company's policies or applicable laws" (id. at 2), and states "all employees who raise issues or . . . report potential violations of Company policy or law . . . will not suffer reprisal, harassment, intimidation, threats, coercion, discrimination or retaliation, or adverse employment action" (id. at 4).[3] Plaintiff further alleges he relied on this policy when he complained orally and in writing to Yardis and Melanophy about suspected ADA and FMLA violations, and that his employment was terminated for doing so. Accordingly, at this stage of the proceedings, plaintiff plausibly alleges that an express written policy limited defendants' right to terminate his employment, and that he relied on that written policy to his detriment.

For these reasons, plaintiff's breach of implied contract claim shall be reinstated.[4]

---

[3] These allegations appear in plaintiff's complaint and opposition to defendants' motion to dismiss. However, in assessing plaintiff's motion for reconsideration, the Court declines to entertain any new facts improperly contained therein. See Schoolcraft v. City of New York, 244 F. Supp. 3d 506, 508 (S.D.N.Y. 2017) (noting a party seeking reconsideration may not "advance new facts . . . not previously presented to the Court").

[4] The other arguments contained in plaintiff's motion for reconsideration are not persuasive.

II.  Motion to Amend

Plaintiff requests leave to amend his complaint to allege a tortious interference with contract claim against Yardis and Melanophy.

For the following reasons, the request is granted.

Under New York law, a tortious interference with contract claim requires that a plaintiff plausibly allege (i) "the existence of a valid contract between the plaintiff and a third party"; (ii) "defendant's knowledge of that contract"; (iii) "defendant's intentional procurement of the third-party's breach of the contract without justification"; (iv) "actual breach of the contract"; and (v) "damages resulting therefrom." Rich v. Fox News Network, LLC, 939 F.3d 112, 126–27 (2d Cir. 2019).

Defendants argue plaintiff should not be granted leave to amend because he declined to amend his complaint when previously given an opportunity to do so, and because the Court has already dismissed plaintiff's breach of implied contract claim.

Although plaintiff previously declined to amend his complaint, in view of plaintiff's pro se status, and because his breach of implied contract claim will be reinstated, the Court grants plaintiff leave to amend his complaint. See Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (noting a liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim"). A liberal reading of plaintiff's proposed amended complaint indicates plaintiff may be able plausibly to allege a tortious interference with contract claim against Yardis and Melanophy. Plaintiff alleges Structure Tone's anti-retaliation policy limited defendants' ability to discharge him from his employment, and that Yardis and Melanophy procured Structure Tone and

Pavarini's breach of contract by terminating plaintiff's employment in retaliation for his complaints respecting alleged ADA and FMLA violations.

However, plaintiff is granted leave to amend his complaint <u>only</u> to add a tortious interference with contract claim.[5] Plaintiff's amended complaint will completely replace, not supplement, the existing complaint. Therefore, plaintiff must include in the amended complaint all information necessary for his existing claims[6] and his proposed tortious interference with contract claim. Plaintiff is directed to include in his amended complaint only those facts he believes plausibly support his claims.

III.    Protective Order

Defendants move for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure to govern the disclosure of certain information to be produced in discovery in this case.

For the following reasons, the Court will issue the proposed protective order. (See Doc. #59-5).

    A.    Legal Standard

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

---

[5]   In his motion for reconsideration, which was filed prior to his motion to amend, plaintiff indicated he was seeking to add a "new claim" for violation of the Age Discrimination in Employment Act ("ADEA"). (Doc. #37 at 9). However, plaintiff's motion to amend does not seek to add an ADEA claim, but only "to add a tortious interference of contract claim against the two individual defendants, Yardis and Melanophy." (Doc. #46 at 4).

[6]   Plaintiff's existing claims are ADA discrimination and retaliation claims against Structure Tone and Pavarini, an FMLA retaliation claim against all defendants, and a breach of implied contract claim against Structure Tone and Pavarini.

undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

Because of its commercial value, commercial information may be subject to certain discovery protections including "a protective order limiting the purposes for which the information can be used and the extent to which it can be disseminated." Cohen v. City of New York, 255 F.R.D. 110, 118 (S.D.N.Y. 2008).  Protective orders are commonly warranted when "the producing party is able to demonstrate that the dissemination of confidential information will place it at a competitive disadvantage." Id.  Indeed, "[p]rotective orders limiting access to highly confidential information to counsel and experts are commonly entered in litigation involving . . . commercial information." ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc., 2009 WL 105503, at *3 (S.D.N.Y. Jan. 14, 2009).

"Whether information merits protection . . . depends upon:  1) the extent to which the information is known outside the business; 2) the extent to which information is known to those inside the business; 3) the measures taken to guard the secrecy of the information; and 4) the value of the information to the business and its competitors." ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc., 2009 WL 105503, at *3.

B.  Application

Here, defendants seek a protective order establishing procedures respecting the production and dissemination of defendants' proprietary, trade secret, or other sensitive non-public commercial information, such as documentation regarding customer lists, pricing, and revenue.  Defendants' proposed protective order substantially replicates model protective orders

of courts in this district. See, e.g., Model Confidentiality Stipulation and Proposed Protective Order, https://www.nysd.uscourts.gov/sites/default/files/practice_documents/SLC%20-%20Cave%20-%20Model%20Confidentiality%20Stipulation%20and%20Proposed%20Protective%20Order.pdf (revised Feb. 24, 2020) (last visited Oct. 9, 2020).

Plaintiff has refused to stipulate to the terms of the proposed protective order, arguing the issuance of such an order would be inordinately burdensome, prejudicial, and, in any event, unnecessary because plaintiff signed an offer letter with a confidentiality clause when he was first hired by Structure Tone and Pavarini in 2002. Plaintiff argues he does not want defendants to disclose any confidential commercial information "or the responsibility for protecting this information." (Doc. #60 at 3). He further argues that, if the Court issues a protective order, the Court should limit defendants' identification of confidential documents "to a small quantity." (Id. at 5).

The Court is not persuaded by plaintiff's arguments, and concludes certain non-public commercial information subject to production merits protection. According to defendants, relevant defenses in this case, as well as plaintiff's claims, require the production of proprietary, trade secret, and other sensitive non-public information due to plaintiff's former employment as a business development executive. Accordingly, an order establishing protective measures for the dissemination of confidential commercial information is appropriate. See ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc., 2009 WL 105503, at *3.

Moreover, the Court declines to place a limit on the number of documents defendants may identify as confidential during the discovery phase, as plaintiff's request to quantitatively limit defendants' identification of confidential documents is arbitrary and unsupported. Plaintiffs' concern that the absence of such a restriction would allow defendants "to lazily label

random documents" confidential (Doc. #60 at 5) is belied by the parties' obligation to fulfill their discovery obligations in good faith. See Chevron Corp. v. Donziger, 296 F.R.D. 168, 213 (S.D.N.Y. 2013); see also Fed. R. Civ. P. 37(a)(1).

As an additional matter, the proposed protective order provided by defendants allows plaintiff to share any documents marked "confidential" with any pro bono counsel he consults, as well as certain family members, which largely assuages plaintiff's concerns regarding the sharing of certain case information with certain people. (See Doc. #59-5).

For the above reasons, the Court will issue defendants' proposed protective order, which will govern the production and dissemination of confidential discovery in this case. (See Doc. #59-5).

## CONCLUSION

The motion for reconsideration is GRANTED, and plaintiff's breach of implied contract claim is reinstated.

The motion for leave to amend is GRANTED. By November 4, 2020, plaintiff shall file an amended complaint, subject to the limitations set forth herein.

By November 25, 2020, defendants shall answer, move, or otherwise respond to the amended complaint.

The motion for a protective order is GRANTED. The Court will So-Order defendants' proposed protective order. (Doc. #59-5).

The Clerk is instructed to terminate the motions. (Docs. ##35, 37, 44, 45, 59).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purposes of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Chambers will mail a copy of this Memorandum Opinion and Order to plaintiff at the address on the docket.

Dated: October 13, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge